UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES J. HENDRIX,<br><br>Defendant. | CASE NO. CR19-0024JLR<br><br>ORDER DENYING MOTION TO DISMISS |

## I. INTRODUCTION

Before the court is Defendant James J. Hendrix's motion to dismiss counts 1, 2, and 4 of the superseding indictment or, in the alternative, to exclude evidence or provide a jury instruction for failure to preserve evidence. (Mot. (Dkt. # 153).) Plaintiff United States of America ("the Government") filed an opposition. (Resp. (Dkt. # 167).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Hendrix's motion.

//

## II. BACKGROUND

On June 21, 2018, officers from the Seattle Police Department ("SPD") arrested Mr. Hendrix in the parking lot of an auto repair shop. (*See* Def. Tr. Br. (Dkt. # 128) at 2.) SPD officers found Mr. Hendrix on scene standing next to the open driver's side door of a U-Haul. (*See id.*) After the officers on scene located a shotgun under the driver's seat of the U-Haul, they arrested Mr. Hendrix. (*See id.* at 2-3.) The SPD impounded the U-Haul and obtained a warrant to search it. (*See* Gov't Tr. Br. (Dkt. # 106) at 6.) During the search, the SPD located the following items of interest:

1) a Mossberg, model 500A, 12 gauge shotgun;
2) a Smith and Wesson, model M&P 40 Shield .40 S&W caliber pistol;
3) a bag containing a white crystalline substance that a forensic chemist at the DEA laboratory analyzed and concluded was 271.3 grams of pure methamphetamine;
4) a packet of green cellophane containing a wallet with the Defendant's identification, currency, a condom, pens, keys, a ring; foil with drug residue; identification in the name of R.N.; and a series of receipts addressed to "Jimi Hendrix";
5) a police scanner and a walkie-talkie;
6) documents, including drug ledgers and a handwritten notice transferring ownership of a BMW;
7) various pieces of identification for other individuals, including a wallet with several pieces of identification for Mr. Hendrix;

      8) a backpack containing a scale with drug residue;

      9) a scale on the dashboard;

      10) a holster on the passenger side of the U-Haul;

      11) bear spray;

      12) a safe that contained a handgun magazine that was loaded with .45 caliber rounds;

      13) burglary tools;

      14) suspected stolen property;

      15) clothes;

      16) a number of cell phones;

      17) a bag with a black wig and a Halloween-style mask stuffed inside;

      18) an ASP baton;

      19) tire irons; and

      20) a black metal sword in a sheath.

(*See id.* at 6-7.)

On December 11, 2019, the Government informed Mr. Hendrix that "[t]here were items left in the U-Haul that were not taken into evidence or photographed by the [SPD]." (Mot. at 2.) The following day, the Government followed up with a letter that explained that "[t]here were items in the U-Haul that [the SPD officer conducting the search] did not photograph or enter in evidence because he did not consider them to be of evidentiary value." (Mot., Ex. 2 at 1.) The items that the SPD officer considered to be of "evidentiary value" were "those that contained contraband, potential evidence of a crime,

and 'D&C' documents (documents with names/identifications that tend to show dominion and control over the U-Haul and/or its contents)." (*See id.*) The SPD officer who conducted the search "does not have an independent recollection of items that were not documented in his report or photographed." (*See id.*)

Shortly after the SPD searched the U-Haul, the SPD ordered a fingerprint analysis of "the interior cab of the [U-Haul]." (*See* Mot., Ex. 4 at 1.) On July 5, 2018, SPD's fingerprint examiner informed the SPD detective who ordered the analysis that she had "finished processing the U-Haul." (*See* Mot., Ex. 5 at 1.) The examiner noted, however, that she "noticed items in the cab" and that the detective would need to submit a new fingerprint request on those items if he wanted them analyzed. (*See id.*) The detective responded and informed the examiner that "we have other items in evidence to process, so [I] am fine with leaving the other items in [t]he truck." (*See id.*)

### III.   ANALYSIS

Mr. Hendrix now alleges that counts 1, 2, and 4 of the indictment—all of which relate to the June 21, 2018, arrest—should be dismissed due to the Government's failure to process all of the items within the U-Haul, which allegedly violates Mr. Hendrix's right to due process. (*See* Mot. at 1-2.) Alternatively, Mr. Hendrix seeks to exclude all evidence obtained from the U-Haul. (*See id.* at 9-10.) Finally, Mr. Hendrix requests an adverse inference instruction stating that the SPD lost evidence from the U-Haul and that evidence may have been favorable to Mr. Hendrix. (*See id.* at 11.) Mr. Hendrix requests an evidentiary hearing to resolve any contested factual matters bearing on these issues. (*See id.* at 6.) In response, the Government claims that none of these sanctions are

warranted because Mr. Hendrix has not shown that the evidence at issue would be exculpatory or that the Government acted in bad faith. (*See* Resp. at 1-2.)

The court first considers whether Mr. Hendrix is entitled to an evidentiary hearing before moving to the merits of his motion.

**A.     Request for an Evidentiary Hearing**

As a threshold matter, the court addresses Mr. Hendrix's request for an evidentiary hearing. Generally, evidentiary hearings must be held "only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Mr. Hendrix has not met that burden here. The relevant factual issues for this motion center on the SPD's search of the U-Haul—specifically, the motion addresses the search of the U-Haul and whether the SPD acted in bad faith in deciding not to photograph and catalog all of the items found within the U-Haul. (*See* Mot. at 7-9.) Despite Mr. Hendrix's claim to the contrary, his moving papers did not "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *See Howell*, 231 F.3d at 620.

First, regarding the search of the U-Haul, the Government's letter explains (1) what evidentiary items the SPD officer found and catalogued in the U-Haul; (2) why the SPD officer catalogued and photographed some, but not all, of the items in the U-Haul; and (3) that the SPD officer does not have an independent recollection of the items in the U-Haul that were not collected or photographed. (*See* Mot., Ex. 2. at 1-2; *see also* Resp. at 2.) Mr. Hendrix's motion does not contest any of those facts. Rather, Mr. Hendrix

argues about the legal implications of the SPD's actions, which is a matter for the court, and does not require an evidentiary hearing.

Second, regarding bad faith, Mr. Hendrix claims that there is at least a dispute over bad faith because, although Mr. Hendrix had informed the SPD that his defense was that he had "nothing to do" with the U-Haul, the SPD still "spoiled evidence in the U-Haul" when it failed to collect preserve every item in the U-Haul. (*See* Mot. at 8.) The court rejects Mr. Hendrix's claim that this argument creates a relevant factual dispute. As discussed in more detail below, *see infra* § III.B.1-2, because there is no evidence as to what items were left in the U-Haul, the court cannot conclude that those items were exculpatory under *California v. Trombetta*, 467 U.S. 479 (1984), or even "potentially useful" under *Arizona v. Youngblood*, 488 U.S. 51 (1988). Without any evidence that law enforcement lost or destroyed exculpatory or "potentially useful" evidence, alleged bad faith on the part of the SPD is not relevant under either *Trombetta* or *Youngblood*. Further, even if bad faith were at issue, the court rejects Mr. Hendrix's nondescript claim that there is a dispute over bad faith merely because the SPD did not collect all items in the U-Haul despite knowledge of Mr. Hendrix's claim that the U-Haul did not belong to him. Mr. Hendrix must allege facts supporting his bad faith theory with "definiteness, clarity, and specificity" before the court can grant an evidentiary hearing. *See Howell*, 231 F.3d at 620. Mr. Hendrix's motion falls woefully short of carrying that burden.

Because Mr. Hendrix has not shown that there are any contested issues of fact, the court DENIES his request for an evidentiary hearing.

//

**B.      Due Process Claim**

The Government's failure to preserve evidence violates due process in two scenarios: (1) when the unavailable evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means," *California v. Trombetta*, 467 U.S. 479, 489 (1984); and (2) where the Government's failure to preserve "potentially useful" evidence—as opposed to exculpatory evidence—was done in bad faith, *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The court considers these issues in turn.

      1.      Exculpatory Value

Under *Trombetta*, the key question is whether an item's exculpatory value is apparent before it is lost or destroyed. *Trombetta*, 467 U.S. at 489. Evidence is exculpatory if it is "favorable to an accused" and "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Exculpatory evidence is material if its introduction at trial would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense." *See Comstock v. Humphries*, 786 F.3d 701, 711 (9th Cir. 2015) (citations omitted). Mere speculation regarding the exculpatory value of evidence is not sufficient to establish that the evidence is exculpatory. *See United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) ("The exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant.").

//

It is not clear whether Mr. Hendrix asks the court to find that the items in the U-Haul that the SPD did not collect or photograph had "exculpatory value." Mr. Hendrix identifies the two relevant due process standards under *Trombetta* and *Youngblood* and half-heartedly asserts that "under either test, relief is warranted." (Mot. at 6-7.) But Mr. Hendrix makes no attempt to argue that the items in the U-Haul had exculpatory value, let alone that the SPD knew that those items were exculpatory when it failed to collect or photograph them. (*See id.*) Indeed, it would be nonsensical for Mr. Hendrix to argue that the uncollected items in the U-Haul were "exculpatory" given that neither Mr. Hendrix nor the Government knows what those items are. The only available evidence shows that the SPD collected and photographed the items that it believed had "evidentiary value" and left everything else in the U-Haul. (*See* Mot., Ex. 2 at 1-2; Resp. at 2.) The court will not jump from those facts to the conclusion that the items the SPD left behind would have exculpated Mr. Hendrix. Thus, Mr. Hendrix cannot establish a due process violation under *Trombetta* and its progeny.

2. Potentially Useful Evidence

Mr. Hendrix also cannot establish that the items left behind in the U-Haul were were "potentially useful" evidence under *Youngblood*. "Potentially useful" evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. The only things that the court knows about the items within the U-Haul are that the SPD collected and photographed a lengthy list of items that it believed had "evidentiary value"—including firearms, narcotics, identification documents, various

suspicious electronics, documents, burglary tools, backpacks, a drug ledger, items of clothing, bear spray, and a drug scale—and left everything else in the U-Haul. (*See* Gov't Tr. Br. at 6-7; Mot., Ex. 2 at 1-2.) Without any information about the remaining items, the court will not conclude that those items were potentially useful to Mr. Hendrix merely because they were in the U-Haul.

Moreover, even if Mr. Hendrix could show that "potentially useful" items were lost, there is no evidence that the SPD acted in bad faith. Where lost or destroyed evidence is only "potentially useful," the defendant alleging due process violations bears the burden to show that law enforcement acted in bad faith in losing or destroying the evidence. *See Youngblood*, 488 U.S. at 57 ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Mr. Hendrix argues that the SPD acted in bad faith because it knew that Mr. Hendrix had claimed that other people were responsible for items in the U-Haul but they "destroyed evidence that could have pointed to" those other suspects. (*See* Mot. at 7.) As noted above, there is no basis for the allegation that the SPD "destroyed evidence." Further, there is also no evidence of bad faith. The SPD searched the U-Haul and collected the items that it believed had "evidentiary value" and then released the U-Haul. (*See* Mot., Ex. 2 at 1-2.) There is no evidence suggesting that the SPD selectively collected only the items that would implicate Mr. Hendrix or that its release of the vehicle or identification of relevant evidence was out of the ordinary. If the failure to collect every item at the scene of a crime—regardless of the apparent evidentiary value of the items—constituted bad faith,

then law enforcement agencies would be required to seize every available item at any crime scene in order to avoid due process complaints. The Supreme Court has specifically rejected that interpretation of due process. *See Youngblood*, 488 U.S. at 58 (recognizing the Court's "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." (citation omitted)).

Mr. Hendrix's argument that the SPD acted in bad faith by failing to fingerprint every item found in the U-Haul is also not persuasive for the same reason. (*See* Mot. at 9.) Mr. Hendrix cannot point to any basis for his suggestion that the SPD was obligated to fingerprint everything found in the U-Haul. The SPD detective in charge of the search of the U-Haul requested fingerprinting of the cab of the U-Haul and other items of evidentiary value. (*See* Mot., Ex. 5 at 1.) In total, the SPD analyzed 34 different items for fingerprints. (*See* Resp. at 2.) There is no evidence that the SPD's decision to fingerprint the evidentiary items that it believed were most relevant was made in bad faith or outside of normal police practices. Indeed, if the court were to hold that the SPD acted in bad faith by failing to fingerprint every item in the U-Haul, it would set an unworkable standard for law enforcement.

Thus, the court concludes that Mr. Hendrix has not shown that the items the SPD left in the U-Haul had exculpatory value or that the SPD acted in bad faith by failing to collect or fingerprint those items. Accordingly, the court DENIES Mr. Hendrix's due process challenge and his request to dismiss counts 1, 2, and 4.

## C. Alternative Sanctions

In the Ninth Circuit, "[t]he rule governing sanctions for lost or destroyed evidence is found in the controlling concurrence in *United States v. Loud Hawk*." *United States v. Robertson*, 895 F.3d 1206, 1213 (9th Cir. 2018) (citing *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *reversed on other grounds in United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008)). According to *Loud Hawk*, a court's "principal concern is to provide the accused an opportunity to produce and examine all relevant evidence to insure a fair trial." *Loud Hawk*, 628 F.2d at 1152. In determining whether sanctions are necessary to protect the interests of the accused, courts must balance "the quality of the Government's conduct" against "the degree of prejudice to the accused." *Id.* In conducting that balancing test, the Government bears the burden of justifying its conduct and the accused of demonstrating prejudice. *Id.* Sanctions against the Government, including suppression of evidence, may be imposed even in the absence of bad faith or a constitutional violation. *See United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) (citing *Loud Hawk*, 628 F.2d at 1152).

Mr. Hendrix is not entitled to sanctions under the *Loud Hawk* balancing test. The court has no concerns with the quality of the Government's conduct in searching the U-Haul and fingerprinting the U-Haul and some, but not all, of the items within the U-Haul. Further, the court cannot find that Mr. Hendrix is prejudiced by the loss of items that neither party knows anything about. Accordingly, Mr. Hendrix is not entitled to exclusion of evidence or a jury instruction. Thus, the court DENIES Mr. Hendrix's request for sanctions.

## IV. CONCLUSION

For the reasons set forth above, Mr. Hendrix's motion to dismiss counts 1, 2, and 4 or, in the alternative, to exclude evidence and provide a jury instruction for failure to preserve evidence (Dkt. # 153) is DENIED.

Dated this 17th day of December, 2019.

JAMES L. ROBART
United States District Judge